UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMY and JAMES ORTEGA, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) CAUSE NO. 1: 10-CV-227 |
| FORKS RV (a/k/a CONTINENTAL COACH, a/k/a FORKS INTERNATIONAL), DARYLE BONTRAGER, HOWARD STUTZMAN, and JAY TROYER, | ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

This case involves a dispute concerning the purported sale of two recreational vehicles by Defendant Forks RV, a manufacturer of recreational vehicles, to Plaintiffs Amy and James Ortega.[1]  Although the Ortegas' Complaint is lengthy and describes nearly a year of discussion, negotiation, and disputes about the two units, it can be set aside at this point since the current issue is whether the Ortegas are entitled to a judgment on all of Forks's counterclaims.

Procedurally, the Ortegas bring this issue to the Court in their Motion for Judgment on the Pleadings (Docket # 36), and in particular, they maintain that Forks has not and cannot: (1) plead a cognizable breach of contract claim for either recreational vehicle; (2) retain a security interest in the first vehicle (described,

---

[1] The Defendants represent that Amy Ortega died during the pendency of this action. (*See* Docket # 41.) Nevertheless, at this point the Court will continue to refer to the Plaintiffs as "the Ortegas."  Similarly, and for simplicity, the Counterclaimants are referred to as "Forks."

according to its Vehicle Identification Number, as the "'7039" vehicle); (3) maintain a suit on account; or (4) sue for conversion of the '7039 vehicle and its license plate. Forks, on the other hand, maintains that these are proper claims and that it has pled enough facts to withstand any motion for judgment on the pleadings.

Since the success of the Ortegas' motion hinges a great deal on the standard the Court must apply under Federal Rule of Civil Procedure 12(c), the Court turns first to that principle.

## II.  STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).  Therefore, the court accepts the allegations in the counterclaim as true and draws all reasonable inferences in favor of Forks, *Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1248 (7th Cir. 1997), but to survive the motion, the counterclaim must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff must therefore provide more than mere legal conclusions and "a formulaic recitation of the elements of a cause of action." *Id.* at 555.

Although a complaint or counterclaim need not contain "detailed factual allegations," it must set forth the facts with enough specificity "to raise a right to relief above the speculative level." *Id*.  This standard requires enough facts "to raise a reasonable expectation that discovery will reveal evidence of [the claim]," *id.* at 556, and if Forks presents nothing more than "unadorned, the-[Ortegas]-unlawfully-harmed-me accusation[s]," the counterclaim falls well-short of what is required. *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2008).  Therefore, it is no longer enough that the allegations supporting a claim "could be true." *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011).

### III.  DISCUSSION[2]

A. <u>Forks has sufficiently pled a breach of contract counterclaim for the sale of the '7039 RV and the '7052 RV</u>.

Under Paragraph B of the Counterclaim, Forks alleges that the Ortegas offered to buy the '7039 RV, Forks sold it to them, and they failed to pay the purchase price. Under Paragraph E, Forks maintains that the Ortegas ordered and agreed to purchase another RV, the '7052 unit, and that after it was built, the Ortegas refused to pay for it and accept delivery.

In their instant Motion, the Ortegas argue that Forks has not attached a written contract for the sale of these units and that if the purported agreement was oral, the attached invoices—Exhibits A and B to the Counterclaim—do not satisfy Indiana Code § 26-1-2-201(1), the Uniform Commercial Code's ("UCC") version of the Statute of Frauds.[3]

In response, Forks avers that the allegations in the Counterclaim, together with the invoices, are sufficient to state a breach of contract claim.  Moreover, Forks emphasizes that at the pleading stage it is not required to show "some writing sufficient to indicate that a contract for sale has been made . . . signed by the party against whom

---

[2] This Opinion and Order assumes familiarity with the facts of the case.

[3] The parties apparently concede that Indiana law applies and that the units are "goods," such that Indiana's version of the UCC applies. IND. CODE § 26-1-1-101 *et seq.*

enforcement is sought . . . ." IND. CODE § 26-1-2-201(1).

Turning to the actual allegations of the Counterclaim, Forks states that for the '7039 RV, it sold and delivered the unit to the Ortegas and obtained partial payment. (Counterclaim ¶ 1, Ex. A.) The balance was to be paid as soon as possible, or upon sale of the RV by the Ortegas, and Forks retained, and still retains, title for "security on the debt . . . ." (Counterclaim ¶ 4.) When the Ortegas did not pay the balance allegedly owed, Forks requested the return of the RV. The Ortegas, however, did not return the RV or pay the balance allegedly owed on the purchase price. (Counterclaim ¶¶ 8, 9, 12.)

For the '7052 unit, Forks claims it built the unit, presumably to the Ortegas' specifications, and invoiced them for $150,570. (Counterclaim ¶ 19, Ex. B.) According to Forks, the Ortegas refused to pay or take the unit, and Forks has been unable to resell it. (Counterclaim ¶¶ 20-21.)

It is unclear exactly what the Ortegas are suggesting Forks must additionally allege to make out these breach of contract claims. One thing is certain, Forks is not required under the Federal Rules of Civil Procedure, and in particular, Rule 8, to attach to its Counterclaim the actual contract or the documents it alleges constitutes the contract. *Paris v. Faith Props., Inc.*, No. 4:08-CV-71, 2009 WL 4799736, at *6 (N.D. Ind. Dec. 8, 2009) (citing *Cardinal Contracting Corp. v. FMC Techs., Inc.*, No. IP02-1063-C-T/K, 2002 WL 1751205, at *2 (S.D. Ind. July 26, 2002)); *see also* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1235 (3d ed. 2009) ("In pleading the existence of an express written contract, the plaintiff, at her election, may set it forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect.").

On the other hand, if what the Ortegas are alleging is that Forks has not sufficiently pled a breach of contract claim, that is equally unavailing. In order to state a claim for breach of contract, Forks must plead: "the existence of a contract, the [Ortegas'] breach thereof, and damages." *Paris*, at *6 (quoting *Ind. Bureau of Motor Vehicles v. Ash, Inc.,* 895 N.E.2d 359, 365 (Ind. Ct. App. 2008) (quoting *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 655 (Ind. Ct. App. 2004))).

Forks has met these straightforward pleading requirements by alleging that it accepted the Ortegas' offer to purchase the '7039 RV, accepted a partial payment for it, delivered the unit, and the Ortegas have failed to either return the unit or pay the balance. For the '7052 unit, the allegations are equally straightforward: the Ortegas ordered the unit, Forks built it, and when told it was ready for delivery, the Ortegas failed to pay for it. These allegations constitute a short and plain statement of the claims and show an entitlement to relief, which is all Forks is required to do under Rule 8(a)(2).

Nevertheless, the Ortegas maintain that Forks has not shown that its claims meet the requirements of the Statute of Frauds because it has not pled, and the invoices do not reveal, there was any written contract for sale signed by either one of the Ortegas as Indiana Code § 26-1-2-201 requires. Fundamentally, of course, the Statute of Frauds is a defense that must be affirmatively stated under Federal Rule of Civil Procedure 8(c)(1) and, indeed, the Ortegas did so, along with ten others in their "Answer to Defendants' Counterclaim." (Docket # 31.)

But Forks was not required to anticipate and plead around an affirmative defense such as the Statute of Frauds. *See Xechem, Inc. v. Bristol-Myers Sguibb Co.,* 372 F.3d

5

899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."). "Complaints need not anticipate or attempt to defuse potential defenses." *U.S. Gypsum v. Ind. Gas Co., Inc.,* 350 F.3d 623, 626 (7th Cir .2004) (citing *Gomez v. Toledo,* 446 U.S. 635 (1980)).

And Forks has not pled itself out of court by alleging all the ingredients of the Statute of Frauds defense, *Xechem*, 372 F.3d at 901, something difficult to do given that the UCC provides several statutory exceptions. For example, when dealing with "merchants," IND. CODE § 26-1-2-104(1), the UCC only requires a "writing in confirmation" that need not be signed by the party to be charged. IND. CODE § 26-1-2-201(2), (4); 1 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE § 2-5 (5th ed.). This exception is arguably applicable since Forks alleges that the Ortegas "represented themselves to Forks as being retail sellers of recreational vehicles." (Counterclaim ¶ 2.)

Notably, the Ortegas have not expressly denied that they are merchants because in their Answer to that Counterclaim Paragraph they simply respond that they "[n]either admit nor deny and leave defendants to their proof." (Answer to Defs.' Counterclaim ¶ 2.) Such a response has been held by some courts to be in violation of Rule 8(b) since that Rule only permits either an admission, a denial, or a detailed statement explaining why the party is without knowledge or information to admit or deny. *King Vision Pay Per View, Ltd. v. J.C. Dimitri's Rest., Inc.*, 180 F.R.D. 332, 333 (N.D. Ill. 1998). Answers that fail to comply with that Rule have been stricken and deemed admitted. *Id.* at 334.

Although the Court is not striking the Ortegas' pleading paragraph or deeming that they have admitted to being "merchants" under the UCC, their status in that regard

remains unclear and an issue of fact.  Therefore, the Ortegas are not entitled to a judgment on the pleadings concerning Forks's breach of contract claims.

    B.  <u>The Ortegas' pleading challenge to Forks's purported security interest in the '7039 vehicle fails</u>.

Forks alleges in its Counterclaim that it sold and delivered the '7039 vehicle to the Ortegas and that, "as security on the debt," Forks retained and still retains title to the unit. (Counterclaim ¶ 4.)  The Ortegas aver, however, that under Indiana Code §§ 26-1-9.1-202 and 26-1-9.1-203, the concept of the unit's title (or presumably, retaining its title) is immaterial to the creation of a security interest and that no security interest was ever intended.[4]

In their briefs, the parties assume that the provisions of Title 9 of the UCC govern, but it is actually the sales provisions of the UCC to which the Court must look for guidance on this point. *Madrid v. Bloomington Auto Co., Inc.*, 782 N.E.2d 386, 396 (Ind. Ct. App. 2003) (holding that legal title to a vehicle is governed by the sales provisions of the UCC).  In particular, Indiana Code § 26–1–2–401(1) provides that under the sales provisions of the UCC, "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."  In short, the UCC provides that while Forks could retain the title, ownership passed to the Ortegas subject to Forks's security interest. *See O'Donnell v. Am. Emp'rs Ins. Co.,* 622 N.E.2d 570, 574 (Ind. Ct. App. 1994).

The same principle appears at Indiana Code § 26–1–2–401(2), which provides

---

[4] The Ortegas in their initial brief contend that no title was ever issued for the RV, but that cannot be resolved at this stage of the proceedings.

that "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." Thus, based on what Forks has alleged, the Ortegas are arguably the owners of the unit, subject, however, to Forks's retained security interest.

Therefore, while the Ortegas apparently deny that a title ever issued for the unit, such that Forks could not retain it as security, that factual question cannot be resolved in their favor at this stage or on this record.

    C.  <u>Forks can maintain a suit on account</u>.

The Ortegas argue that Forks cannot maintain a suit on account because there has been no showing or evidence of a written contract to support the creation of an account and simply attaching the invoice to the Counterclaim is insufficient to show such an account.

Of course, at this stage, and in contrast to what it must do in response to a motion for summary judgment, Forks is not required, as the Ortegas seem to suggest, to come forward with evidence. *Durkin v. Equifax Check Servs., Inc.*, No. 00 C 4832, 2003 WL 22078331, at *1 (N.D. Ill. Sept. 8, 2003) ("Although Defendant would like Plaintiff to come forward with extrinsic evidence to support their allegations, this evidentiary burden is not triggered by Defendant's [R]ule 12(c) motion."). And as discussed earlier, Forks can, at this point, advance a claim based on a breach of contract.

Moreover, Forks has adequately pled this claim. Form 10 of the Federal Rules of Civil Procedures' Appendix of Forms sets forth the minimal, but approved, requirements

for pleading a suit on account: "The defendant owes the plaintiff $\_\_\_\_\_ according to the account set out in Exhibit A."  Rule 84 then specifically states that "the forms contained in the Appendix of Forms are sufficient under the rules." *See* Fed. R. Civ. P. 84.  Thus, Forks has adequately pled a suit on account.

Finally, Forks has advanced plausible facts showing a claim for suit on account.  As the invoice attached to the Counterclaim shows, but which, of course, the Ortegas dispute, they purportedly owe Forks $66,159.08 from the alleged sale of the '7039 RV after a payment of $59,509.  Accordingly, for purposes of the current motion, the Court must accept this allegation as true, *Mallett*, 130 F.3d at 1248, and thus the Rule 12(c) motion must be denied on this basis as well.

D.  <u>Forks can maintain a conversion claim for the '7039 RV and its license plate</u>.

Forks alleges in Paragraph D of its Counterclaim that the Ortegas failed to pay the purchase price of the '7039 RV and have refused to return the unit (and the license plate Forks attached to it) and this "amounts to conversion" and exposes them to treble damages under Indiana Code § 35-43-4-3.[5]  (Counterclaim ¶ 17.)  In challenging this claim, however, the Ortegas summarily argue that Indiana Code § 35-43-4-3 is "not appropriate" because this case is either a contract dispute or the failure to pay a debt, and, consequently, Forks cannot prove criminal intent. (Reply Br. 5.)

In order to be successful on the conversion claim, Forks will eventually have to show by a preponderance of the evidence that the Ortegas "knowingly or intentionally exert[ed] unauthorized control over [Forks's] property . . . ." IND. CODE § 35-43-4-3(a).

---

[5] Forks is presumably seeking treble damages under Indiana Code § 34-24-3-1(1)(A), although that statute was not mentioned in the briefs.  Moreover, while Indiana Code § 34-24-3-1(3) also provides for "[a] reasonable attorney's fee," Forks has not sought that relief in Paragraph D of its Counterclaim.

This must be more than a mere repackaging "of its breach of contract claim." *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008).

In that regard, the Ortegas see the case cited by Forks, *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008), *trans. denied*, 891 N.E.2d 49 (Ind. 2008), as actually supporting their position because it reinforces the proposition that Forks must prove *mens rea*, and this element "differentiates criminal conversion from a more innocent breach of contract or failure to pay a debt, which situations the criminal conversion statute was not intended to cover."

Notably, however, the conversion statute offers two levels of criminal intent, "knowingly" or "intentionally," and proof of either will suffice. Under Indiana law, "knowingly" is defined at Indiana Code § 35-41-2-2(b):

> A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

Accordingly, to establish *mens rea*, Forks must show that the Ortegas were aware of a high probability that their control over the '7039 unit was unauthorized. *JET Credit Union*, 879 N.E.2d at 597. Whether a defendant possesses the requisite *mens rea* is a genuine issue of material fact. *See Mills v. Kimbley*, 909 N.E.2d 1068, 1078 (Ind. Ct. App. 2009).

In that regard, Forks has alleged that the Ortegas refused their demand for the return of the unit and license plate and continue to use them for their own benefit. (Counterclaim ¶ 17.) The Court cannot resolve the *mens rea* issue on a motion for judgment on the pleadings, and Forks's allegations are otherwise adequate for pleading conversion. Accordingly, the Ortegas' Motion must be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Ortegas' Motion for Judgment on the Pleadings (Docket # 36) is DENIED.

Enter for January 23, 2012.

S/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
