**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **AMY AND JAMES ORTEGA,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **CAUSE NO. 1:10-CV-227** |
| | ) |
| **FORKS RV a/k/a Continental Coach a/k/a** | ) |
| **Forks International, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Plaintiffs Amy and James Ortega assert that in the summer of 2009 they entered into an

implied agreement or quasi-contract with Defendants Forks RV a/k/a Continental Coach a/k/a

Forks International concerning the design, manufacturing, marketing, and sale of certain

recreational vehicles customized for use in the equine industry (the "RVs").[1]  The Ortegas filed

this suit one year later, claiming that Forks and three of its owners or employees (collectively,

"Forks") breached the purported agreement, were unjustly enriched, and violated the Copyright

Act by using the Ortegas' designs for the RVs in an unauthorized manner.[2] (Docket # 1.)

Forks vehemently denies the existence of the type of sales distributorship agreement

described by the Ortegas.  Instead, it claims that the Ortegas breached two separate express

contracts for the purchase of two RVs and, accordingly, advances counterclaims for breach of

contract, suit on account, and conversion. (Docket # 31.)  This dispute has become quite

---

[1] As will be discussed *infra*, Amy Ortega died during the pendency of this litigation. (Docket #41.)

[2] Diversity jurisdiction exists under 28 U.S.C. § 1332(a).  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket #29.)

contentious, and the parties have now filed a plethora of motions which are ripe for ruling,

including a motion to dismiss Amy Ortega (Docket # 80), cross-motions for summary judgment

(Docket # 55, 57, 62), and four motions to strike that allege a host of technical transgressions

(Docket # 60, 64, 73, 77).[3]

Having reviewed these filings, the Court will GRANT Forks's motion to dismiss Amy

Ortega and will GRANT IN PART Forks's motion for summary judgment in that Ortega's

copyright infringement claim and request for damages predicated on emotional distress will be

dismissed and Forks's request for attorney's fees in defending the copyright infringement claim

will be granted.  But because genuine disputes of material fact require a trial as to the parties'

other claims, the pending motions will otherwise be DENIED.

## I.  THE MOTION TO DISMISS AMY ORTEGA

Plaintiff Amy Ortega died on October 19, 2011, and Forks filed a notice to that effect on

December 16, 2011. (Docket # 41.)  Forks now seeks to dismiss her from this action.

Federal Rule of Civil Procedure 25(a) states: "If a party dies and the claim is not

extinguished, the court may order substitution of the proper party . . . .  If the motion is not made

within 90 days after service of a statement noting the death, the action by or against the decedent

must be dismissed." *See Russell v. City of Milwaukee*, 338 F.3d 662, 665 (7th Cir. 2003)

(denying plaintiff's request for an extension of time to file a motion for substitution of parties

and dismissing suit under Rule 25(a)(1)); *Magee v. Hous. Auth. of South Bend*, No. 3:09-cv-337,

2010 WL 2950449, at *2 (N.D. Ind. July 21, 2010) (same).  Here, the ninety-day period passed

---

[3] Although the Ortegas did not file a reply to their summary judgment motion or their motion to strike and Forks did not file a reply to one of its motions to strike, the time to do so has since passed and thus the motions are ripe for ruling.

on March 15, 2012, and no motion for substitution has been filed.

James Ortega argues that, despite Rule 25(a), a motion for substitution was not necessary in this instance.  He elaborates that pursuant to the general rules of descent articulated in Section 474.010 of the Missouri Probate Code, which he purports is the law applicable to this issue, he, as Amy's surviving spouse, inherits all of her property.  As he sees it, he is, by operation of Missouri law, the successor to Amy's rights in this action and thus may proceed both in his individual capacity and on her behalf regardless of a motion for substitution. (Docket # 85.)

But whether James Ortega *inherits* his wife's claim in this suit is not the issue.  Both Federal Rule of Civil Procedure 25(a) and Missouri Supreme Court Rule 52.13 procedurally provide that if a motion for substitution is not made within ninety days after receiving the notice of death, "the action by or against the decedent must be dismissed." *See, e.g., Magee*, 2010 WL 2950449, at *2 (denying individual plaintiff's request to simply "change her status from that of an individual plaintiff to that of a plaintiff on behalf of herself and her late daughter" and dismissing decedent's claims where no motion for substitution had been timely filed); *Loven v. Davis*, 783 S.W.2d 152, 154 (Mo. App. S.D. 1990) ("The death of Stanley, and failure to file suggestions of his death with the trial court, which resulted in no successor or personal representative being appointed to represent his interests, terminated the action against him. Therefore, any part of the trial court's ruling . . . referring to Stanley Davis is void, but does not affect the ruling which applies to [his wife,] Neva Davis.").

Perhaps recognizing the futility of his argument, James Ortega alternatively asks for an extension of time within which to open an estate and file a motion to substitute a proper party for Amy.  But while "[a] motion filed before the deadline may be granted 'for good cause,' a motion

made after the time has expired may be granted only if 'the party failed to act because of excusable neglect.'" *Murphy v. Eddie Murphy Prods., Inc*., 611 F.3d 322, 324 (7th Cir. 2010) (quoting Fed. R. Civ. P. 6(b)(1)). Here, Ortega does not satisfy either standard, as he makes *no* attempt to explain why, despite his diligence, the time table could not reasonably have been met. *See Smith v. Howe Military Sch.*, No. 3:96-cv-790RM, 1997 WL 662506, at *1 (N.D. Ind. Oct. 20, 1997).

In that regard, Forks did not file the notice of Amy Ortega's death until fifty-eight days after she died, and then James Ortega had ninety days after that to file a motion for substitution. Thus, James Ortega has already had ample time—more than five months—to seek to substitute a proper party for Amy; yet, he offers no reason for his delay. Nor is Ortega's failure to file a motion for substitution due to a "plausible misinterpretation[] of ambiguous rules" that could constitute excusable neglect. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 740 (7th Cir. 2008). Consequently, his request to file a belated motion for substitution of a party will be DENIED, and Plaintiff Amy Ortega will be DISMISSED from this action, leaving James Ortega as the sole Plaintiff in this action. Similarly, any counterclaim by Defendants against Amy Ortega is likewise DISMISSED.

## II. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

In their motions for summary judgment, the parties attempt to describe a rather convoluted business relationship and leave significant factual gaps in the record; as a result, the Court's task in  deciphering their filings was quite difficult. A summation of the parties' respective, albeit confusing, positions follows.

### A. James Ortega's Position

Boiling this case down from James Ortega's perspective, in the summer of 2009 the parties entered into an implied agreement or quasi-contract whereby Forks would manufacture and customize the RVs according to Ortega's designs, and then Ortega would market and sell the RVs in the equine industry. Ortega and Forks would then equally split the expenses and profits associated with the venture.

In furtherance of this "agreement," in August 2009 Ortega took possession of RV # 7039—the first recreational vehicle customized by Forks according to Ortega's design—as a "demo" unit and traveled in it to equine shows to promote the sale of the customized RVs. Forks, however, retained the certificate of origin and title, and also insured and plated RV #7039.

In September 2009, Ortega, through "Money Tree Associates, Inc.," purportedly "loaned" Forks $59,509, with the understanding that RV #7039 served as collateral for the loan.[4] Two months later, Ortega submitted purchase orders for two more RVs—the "Purdin" and the "Ortega I" units. The Purdin unit was ultimately sold to the customer who ordered it. Forks, however, purportedly usurped Ortega's interest in the Ortega I RV by directly marketing and selling it to a third party for approximately $20,000 less than its original asking price.

In filing suit, Ortega contends that Forks violated what was essentially a sales distributorship agreement in numerous ways, including manufacturing delays; producing flawed and defective units; delaying responses for requests concerning pricing, floor plans, and other information; unilaterally raising the price of the RVs; failing to reimburse expenses; failing to

---

[4] No one has suggested that the real party in interest on this claim, that is, the purported lienholder, is "Money Tree Associates, Inc.," or indeed, what the precise relationship is between James Ortega and that corporate entity.

pay back the so-called "loan"; using designs without authorization; and utilizing his customer base for direct marketing.  Ortega claims that Forks's purported breach and copyright infringement caused him to experience, among other things, lost profits, increased expenses, harm to his customer relationships, and difficulty with future sales.

### B.  Forks's Position

Not surprisingly, Forks views its contractual relationship with Ortega quite differently.  It argues that the purported agreement described by Ortega never existed and that Ortega instead simply entered into two express contracts to purchase RV #7039 and the Ortega I.

As to RV #7039, Forks contends that it sent Ortega an invoice in the amount of $124,840 for this unit and that Ortega's check of $59,509 was *not* a loan but instead a down payment toward the RV's purchase price.  Similarly, with respect to the Ortega I, Forks asserts that Ortega submitted a purchase order for that RV and Forks later invoiced him for the purchase price, but Ortega failed to pay the invoice and pick up the RV.  As Forks sees it, these invoices and purchase order constitute two express contracts for the sale of goods—RV #7039 and Ortega I—between "merchants" under Indiana's version of the Uniform Commercial Code, which Ortega breached. *See* IND. CODE §§ 26-1-2-104, 204.

Forks further clarifies that although the parties did exchange a draft sales distributorship agreement, that agreement was never finalized and executed and thus there was never a "meeting of the minds" concerning the contractual arrangement that Ortega describes.  Forks emphasizes that the two express contracts bar Ortega's claims because the Court cannot imply additional terms or disregard express contract terms in favor of the theory of implied agreement or quasi-contract that Ortega promotes.  And as to its conversion claim, Forks asserts that Ortega

converted RV #7039 when it retained possession of the unit after refusing to pay the balance of

the invoice.

### *C.  Standard of Review*

Summary judgment may be granted only if there are no disputed genuine issues of

material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  When ruling on a motion for

summary judgment, a court "may not make credibility determinations, weigh the evidence, or

decide which inferences to draw from the facts; these are jobs for a factfinder." *Id*.  The only task

in ruling on a motion for summary judgment is "to decide, based on the evidence of record,

whether there is any material dispute of fact that requires a trial." *Gates v. Caterpillar, Inc.*, 513

F.3d 680, 688 (7th Cir. 2008) (quoting *Payne*, 337 F.3d at 770).  If the evidence is such that a

reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment

may not be granted. *Payne*, 337 F.3d at 770.  "When cross-motions for summary judgment are

filed, courts 'look to the burden of proof that each party would bear on an issue of trial; [courts]

then require that party to go beyond the pleadings and affirmatively to establish a genuine issue

of material fact.'" *M.O. v. Ind. Dept. of Educ.*, No. 2:07-CV-175-TS, 2009 WL 857548, at \*3

(N.D. Ind. Mar. 31, 2009) (alteration in original) (citing *Santaella v. Metro. Life Ins. Co.*, 123

F.3d 456, 461 (7th Cir. 1997)).

### *D.  A Material Factual Dispute Exists With Respect to the Breach of Contract, Unjust Enrichment, Suit on Account, and Conversion Claims*

Having reviewed the record and the dense and nearly impenetrable factual record

submitted by the parties, genuine disputes of material fact remain that require a trial concerning

the breach of contract, unjust enrichment, suit on account, and conversion claims.

In particular, as to the breach of contract claims, which the parties agree are governed by

Indiana law, there is a genuine issue of material fact concerning whether a type of sales

distributorship agreement as described by the Ortegas ever existed.  On the one hand, Forks

represents that there was no meeting of the minds on this matter, emphasizing that the express

"Sales Agreement" of record dated November 24, 2009, was never finalized and signed. (Pl.'s

Br. in Opp'n Ex. B.)  But there is also an email dated February 24, 2010, from the President of

Forks to Ortega referring to the existence of *just* such a sales distributorship agreement, where

profits and expenses would be equally split between Ortega and Forks. (Pl.'s Br. in Opp'n Ex. B

("In the agreement we agreed to pay to 50% of expenses directly related to the showing of and

selling of the horse hauler, after which all profits made between dealer cost and retail sales price

will be divided; 50% for Moneytree and Associates and 50% for Forks [RV].")); *see generally*

*Alliance Laundry Sys., LLC v. Thyssenkrupp Materials, NA*, 570 F. Supp. 2d 1061, 1067-68 (7th

Cir. 2008) (discussing the principles of contract formation under the Uniform Commercial Code

with respect to writings and emails and concluding that, based on the record at that juncture,

neither party was entitled to summary judgment).

Further complicating matters, Ortega describes yet another type of arrangement with

Forks.  He testified that the "actual arrangement" was that Forks was supposed "to build these

units" and then he would "pay for Ortega I, pay for Ortega 2" and keep the "mark-up." (Ortega

Dep. 32 ("[T]hey were supposed to actually have built an Ortega I and an Ortega 2 unit that we

were actually purchasing."), 62 ("We were purchasing a product from a manufacturer, just like

any dealer.  They were to provide us a product.  We paid for it.  What we did with it after that,

marked it up and all, was private.").)

There is also a genuine issue of material fact about whether Forks ever sent or presented

the invoices for RV #7039 and Ortega I to Ortega, which Forks claims reflect the *only* contracts

between the parties.  Although Forks represents that it did (Troyer Aff. ¶¶ 4, 7), Ortega testified

that he did not see the invoices Forks now relies on until *after* this litigation commenced (Ortega

Dep. 109, 116-17), and one of the invoices does not even refer to Ortega (Troyer Aff. ¶ 4, Ex. C;

Ortega Dep. 90-91).

In that same vein, there is a material factual dispute about whether the $59,509 Ortega

paid to Forks was intended to be a loan, as Ortega testified (Ortega Dep. 24-25, 75-76; Pl.'s Br.

in Opp'n Ex. B), or a down payment toward the purchase price of RV #7039, as Forks claims

(Troyer Aff. ¶¶ 6, 7).  And although it appears that Ortega would be considered a "merchant"

under Indiana's version of the Uniform Commercial Code, rather than a casual or occasional

buyer or seller, the inconsistency and confusing nature of the factual record presented by the

parties makes that point not entirely clear. *See* Ind. Code § 26-1-2-104 ("'Merchant' means a

person who deals in goods of the kind or otherwise by his occupation holds himself out as

having knowledge or skill peculiar to the practices or goods involved in the transaction . . . .");

*Milwaukee Cnty. v. Northrop Data Sys., Inc*., 602 F.2d 767, 771 (7th Cir. 1979) ("The question

whether a [party] may be a merchant as that term is used in the U.C.C. is a question of law for

the courts to decide by applying the U.C.C. definition of merchant to the facts in the case.").

Moreover, the record is, for the most part, devoid of the factual specifics concerning the

one sale that actually occurred as a result of Ortega's involvement—the Purdin unit.  Thus, on

this record, the Court is unable to glean any insight into the parties' relationship from that,

apparently somewhat successful, transaction.

Given this myriad of factual disputes and the gaps in the record as presented, the Court

cannot make the findings of fact necessary to resolve the dispute regarding the existence of one

or more enforceable contracts on summary judgment. *See, e.g., Ogdon v. Hoyt*, 409 F. Supp. 2d

982, 987 (N.D. Ill. 2006) (denying summary judgment in a breach of contract case where the

parties presented a convoluted factual record, emphasizing that "judges are not compelled to root

through the record like a pig hunting for truffles"); *United Vaccines, Inc. v. Diamond Animal

Health, Inc.*, No. 05-C-604-C, 2006 WL 1666271, at *14-15 (W.D. Wis. June 12, 2006) (denying

defendant's summary judgment motion on a breach of contract claim where gaps in the factual

record made it unclear whether a purchase order existed for the goods).  Whatever the details, "it

is abundantly clear that triable issues of material fact exist that preclude summary judgment in

favor of either party" on all claims other than (as will be discussed next) Ortega's copyright

infringement claim. *Ogdon*, 409 F. Supp. 2d at 987.  Therefore, each side will have the chance

for its breach of contract and related claims to be heard and decided by a jury.

As a final note, although the parties filed multiple motions to strike, the trial will be the

best forum for making the evidentiary objections.  Therefore, the Court will DENY without

prejudice all of the motions to strike.

### E.  Summary Judgment Will Be Granted on Ortega's Copyright Infringement Claim

In contrast to the breach of contract and related claims, Ortega's copyright infringement

claim is easily disposed of on summary judgment.  To review, Ortega asserts that Forks violated

the Copyright Act when it purportedly used his RV designs in an unauthorized manner.

The Copyright Act states that "no civil action for infringement of the copyright in any

United States work shall be instituted until preregistration or registration of the copyright claim

has been made in accordance with this title." 17 U.S.C. § 411(a).  Thus, "[s]ubject to certain

exceptions, the Copyright Act . . . requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier v. Muchnick*, 130 S. Ct. 1237, 1241 (2010).  The exceptions include a limited set of moral rights for artists who create specific types of visual art, 17 U.S.C. § 106A(a); *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 298 (7th Cir. 2011), and work consisting of sounds or images in which the first fixation is made simultaneously with transmission, 17 U.S.C. § 411(b); *Rudnicki v. WPNA 1490 AM Alliance Commc'ns, Inc.*, No. 04-C 5719, 2006 WL 59368, at \*2 (N.D. Ill. Jan. 4, 2006).

Fatal to his claim, Ortega concedes that he never registered the RV designs he provided to Forks. (Pl.'s Br. in Opp'n 3.)  And he does not suggest that the designs fall within an exception to the registration requirement, and wisely so, as there is no indication that an exception would apply here.  As a result, Ortega's copyright infringement claim fails as a matter of law, and Forks's motion for summary judgment on the claim will be GRANTED. *See, e.g.*, *Estate of Brown v. Arc Music Grp.*, No. 10 C 7141, 2011 WL 5867987, at \*12 (N.D. Ill. Nov. 22, 2011) (dismissing copyright infringement claim where plaintiff failed to allege that certain musical compositions had been registered).

Forks also asks the Court to award it attorney fees under 17 U.S.C. § 505 for its defense of the copyright infringement claim.  In that respect, "no precise formula governs the determination, but instead equitable discretion should be exercised." *Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 731 (7th Cir. 1996); *see Gonzalez v. Transfer Tech., Inc.*, 301 F.3d 608, 609 (7th Cir. 2002).  Several nonexclusive factors to guide a court's discretion include: "frivolousness, motivation, objective unreasonableness . . ., and the need in particular circumstances to advance considerations of compensation and deterrence." *Gonzalez*, 301 F.3d at

609; *accord JCW Invs., Inc. v. Novelty, Inc*., 509 F.3d 339, 342 (7th Cir. 2007).

Considering these factors, the Court concludes that Forks is entitled to an award of reasonable attorney's fees under § 505. *See HyperQuest, Inc. v. N'Site Solutions, Inc*., 632 F.3d 377, 387 (7th Cir. 2011) ("Defendants who defeat a copyright infringement action are entitled to a strong presumption in favor of a grant of fees."); *Eagle Servs. Corp. v H20 Indus. Servs., Inc.*, 532 F.3d 620, 624 (7th Cir. 2008) ("[W]hen the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong.").  Although there is no indication of actual bad faith on Ortega's part, "the record demonstrates quite clearly that [his] case against [Forks] was objectively unreasonable . . . ." *Budget Cinema*, 81 F.3d at 732.  That is, Ortega advanced a claim of copyright infringement *knowing* he had not registered the designs. *See id.* (finding a plaintiff's claim of copyright infringement was "objectively unreasonable" where it alleged the infringement commenced before the effective date of its copyright registration).  Therefore, Forks's request for the award of attorney's fees under 17 U.S.C. § 505 will be GRANTED.

### F.  Ortega Is Not Entitled to Damages for Emotional Distress

Forks states that Ortega has, at various times, demanded compensation for alleged emotional distress and consequential losses such as "financial hardship."  Forks now seeks judgment as a matter of law on any claims for damages predicated on these grounds.

As to emotional distress, under Indiana law "emotional damages are generally not recoverable under a breach of contract claim." *Tacket v. Gen. Motors Corp., Delco Remy Div*., 830 F. Supp. 468, 473-74 (S.D. Ind. 1993).  Rather, damages for emotional distress are recoverable when related to a claim for emotional injury, which requires a plaintiff to show that

he has sustained a direct physical impact (the "modified impact" rule) or witnesses the death or severe injury of a loved one (the "bystander" rule). *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 367 (7th Cir. 2009); *Patel v. United Fire & Cas. Co.*, 80 F. Supp. 2d 948, 956-57 (N.D. Ind. 2000).

The dispute at hand arises out of a purported contractual relationship, and Ortega does not offer any evidence that would support a claim for intentional or negligent infliction of emotional distress. *Firstmark Standard Life Ins. Co. v. Goss*, 699 N.E.2d 689, 695 (Ind. Ct. App. 1998) (granting summary judgment on plaintiff's request for emotional distress damages arising out of an insurance contract dispute).  In any event, the complaints of emotional distress were primarily linked to Amy Ortega, who, as concluded earlier, will be dismissed from the case. Therefore, summary judgment will be GRANTED with respect to Ortega's claim for damages predicated on emotional distress.

As to consequential damages, they "may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made." *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind. 1999).  Thus, consequential damages are generally limited to "reasonably foreseeable economic losses." *Id.*  The Court concludes that, due to the confusing nature of the record concerning the parties' purported contractual relationship, it is most prudent to reserve the issue of consequential damages for trial.  Therefore, Forks's plea for summary judgment on Ortega's request for consequential damages will be DENIED.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff Amy Ortega (Docket

# 80) is GRANTED; accordingly, the claims by and against Amy Ortega are hereby dismissed. In addition, for the reasons stated, Plaintiff's Motion for Summary Judgment (Docket # 55) and Amended Motion for Summary Judgment (Docket # 62) are DENIED.  Defendants' Motion for Summary Judgment (Docket # 57) is GRANTED IN PART in that (1) Plaintiff's copyright infringement claim is DISMISSED and he shall take nothing from Defendants on such claim, (2) Defendants are entitled to attorney fees on the copyright infringement claim against James Ortega,[5] and (3) Plaintiff's request for damages due to emotional distress is DISMISSED; otherwise the Motion is DENIED.  The parties' respective motions to strike (Docket # 60, 64, 73, 77) are all DENIED.  The Court sets this case for a scheduling conference on June 11, 2012, at 11:00 a.m., Fort Wayne time; counsel are to appear in person.  The Court will discuss at that time the date for a final pretrial conference and trial.

SO ORDERED.

Enter for the 22nd day of May, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[5] The amount of attorney fees will be addressed in a separate order following further briefing.  The Court will set a briefing schedule at a later date.